```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF WEST VIRGINIA

                              CHARLESTON
```

**UNITED STATES OF AMERICA**

**v.**                                    **Case No. 2:06-cr-00134**

**LOUIS DANTE DITRAPANO**


<u>**MEMORANDUM OPINION AND ORDER**</u>

The United States filed a Motion for Detention Hearing, asserting that this case is eligible for a detention hearing, pursuant to 18 U.S.C. § 3142(f)(1)(A), because the defendant is charged with a "crime of violence."  The defendant has filed a Response, contending that the case is not eligible.

Count One charges the defendant with possessing seven firearms while he was an unlawful user of and addicted to a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) (ten year exposure).  Count Two alleges that the defendant made a false statement to a gun dealer when he represented on an ATF Form 4473 that he was not an unlawful user of and addicted to a controlled substance, in violation of 18 U.S.C. § 924(a)(1)(A) (five year exposure).

The Bail Reform Act defines "crime of violence" in 18 U.S.C. § 3156(a)(4) as:

> (a) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, [or]
>
> (b) any other offense that is a felony and that, by

1

>its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense . . ..

At the hearing on June 20, 2006, the court ruled from the bench that the case was eligible for a detention hearing, because Congress in its wisdom had determined that persons addicted to controlled substances (among other categories of persons) pose a special risk to the safety of other persons and the community due to the mind-altering effect and unlawfulness of such drugs. The court relied upon United States v. Spry, 76 F. Supp.2d 719 (S.D. W. Va. 1999) (Haden, C.J.) (felon in possession of a firearm is a "crime of violence" for the purpose of the Bail Reform Act), and United States v. Jenkins, 128 F. Supp.2d 351 (S.D. W. Va. 2001) (Goodwin, J.) (aiding and abetting the theft of firearms from a federally licensed gun dealer was a "crime of violence" for the purpose of the Bail Reform Act). The purpose of this Memorandum Opinion and Order is to elaborate on the court's reasoning.

The court has failed to find a case directly on point. Review of the legislative history of 18 U.S.C. §§ 922(g) and 924(a) reveals that they was enacted as part of the Gun Control Act of 1968. The Supreme Court discussed the legislative history at length in Huddleston v. United States, 415 U.S. 814, 824-29 (1974). In that case, the Court noted that Congress was "concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." Id., at 824.

> The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping "firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." S. Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968). U.S. Code Cong. & Admin. News 1968, p. 4410.
>
> * * *
>
> Section 922(a) . . . was enacted as a means of providing adequate and truthful information about firearms transactions. Information drawn from records kept by dealers was a prime guarantee of the Act's effectiveness in keeping "these lethal weapons out of the hands of criminals, drug addicts, mentally disordered persons, juveniles, and other persons whose possession of them is too high a price in danger to us all to allow." 114 Cong. Rec. 13219 (1968) (remarks of Sen. Tydings).
>
> * * *
>
> Congressman Celler, the House Manager, stated: "Mr. Chairman, none of us who support Federal firearms controls believe that any bill or any system of control can guarantee that society will be safe from firearms misuse. But we are convinced that a strengthened system can significantly contribute to reduc[]ing the danger of crime in the United States. No one can dispute the need to prevent drug addicts, mental incompetents, persons with a history of mental disturbances, and persons convicted of certain offenses, from buying, owning, or possessing firearms. This bill seeks to maximize the possibility of keeping firearms out of the hands of such persons." <u>Id.</u>, at Rec. 21784.

415 U.S. at 824-25, 828.

In <u>Dickerson v. New Banner Institute, Inc.</u>, 460 U.S. 103, 119 (1983), the Court cited to the Congressional goal to keep "firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency," and noted: "[i]n order to accomplish this goal, Congress obviously determined that firearms must be kept away from persons . . . who might be

3

expected to misuse them."

The Fourth Circuit confirmed that understanding when it wrote: Congress listed "nine classes of people barred from firearm possession by § 922(g) . . ., who by reason of their status, Congress considered too dangerous to possess guns." United States v. Dunford, 148 F.3d 385, 388-89 (4th Cir. 1998).

These holdings, taken together, establish that Congress enacted §§ 922(g)(3) and 924(a) to prevent persons who are addicted to controlled substances from possessing firearms because they pose such a significant danger to the general public. It is not unusual for courts to comment on the "dangerous combination" of "drugs and guns." See, e.g., Smith v. United States, 508 U.S. 223, 240 (1993); Muscarello v. United States, 524 U.S. 125, 132 (1998).

The statutory sections do not differentiate between persons addicted to controlled substances which they obtain lawfully (by prescription or by attending a methadone clinic) and those who obtain the drugs unlawfully (by purchase or by manufacture). The mere fact that the person is addicted to a controlled substance is sufficient to disqualify him from possessing a firearm. Drug addicts are, by definition, subject to a compulsive physiological need for the drug, Webster's New Collegiate Dictionary, and they suffer discomfort when their need is not met. Judicial officers frequently see the results of drug addicts' compulsive use of controlled substances: shootings and murders, domestic abuse, ruined finances, destroyed health, and widespread property crimes.

4

Following the reasoning of Spry and Jenkins, the court adopts a categorical approach, and will consider the nature of the offense. The crime of a drug addict possessing one or more firearms, 18 U.S.C. § 924(g)(3), is a felony which, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. A drug addict in possession of a firearm has the means to force another to give him drugs and/or money to buy drugs, to threaten force or to use force to protect his drug stash, and to intimidate others to behave according to his drug-affected demands. The court acknowledges that there are circumstances which could suggest that a drug addict's possession of a firearm is not "of an immediately dangerous character," Spry, 76 F. Supp.2d at 722. In general, however, the specter of a drug addict in possession of a firearm is fraught with the strong possibility of violence.

Accordingly, the court finds that 18 U.S.C. § 922(g)(3) is a "crime of violence" for the purpose of making that offense eligible for a detention hearing, pursuant to 18 U.S.C. § 3142(f)(1)(A). As previously noted on the record and in the Order entered June 15, 2006 (docket # 15), it is hereby **ORDERED** that the government's Motion for Detention Hearing (# 6) is granted.

5

The Clerk is directed to provide copies of this Memorandum Opinion and Order to the defendant, counsel of record, and the Probation Department.

ENTER: June 23, 2006

                                        *Mary E. Stanley*
                                        Mary E. Stanley
                                        United States Magistrate Judge